FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 4:34 pm, Nov 22, 2013

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE:<br><br>TARSHA B. YEARBY,<br><br>    Debtor | Chapter 13 Case<br>Number <u>11-11230</u> |
| TARSHA B. YEARBY,<br><br>    Plaintiff<br><br>v.<br><br>MUHAMMAD HUSSEIN SHEKASTEHBAND,<br>a/k/a MIKE SHEKASTEHBAND, a/k/a<br>MIKE BAND and<br>TOMON CONCEPTS, INC., d/b/a<br>TCI,<br><br>    Defendants | Adversary Proceeding<br>Number <u>12-01004</u> |

## OPINION AND ORDER

    Before the Court is a Motion for Default Judgment on a Complaint for Sanctions for Violation of the Automatic Stay filed by Tarsha B. Yearby ("Debtor") against Muhammad Hussein Shekastehband a/k/a Mike Shekastehband a/k/a Mike Band ("Dr. Band") and Tomon Concepts, Inc., d/b/a TCI ("TCI") (collectively, "Defendants"). Debtor seeks damages for Defendants' post-petition actions of "assisting" in a grand jury indictment against Debtor which lead to

Debtor's arrest for deposit account fraud. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (G) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, the motion for default judgment for violation of the automatic stay is denied.

## UNDISPUTED FACTS

This adversary was commenced on January 20, 2012. After no answer was filed by TCI, Debtor filed a Motion for Entry of Default against TCI and default was entered against TCI on January 11, 2013. Dr. Band filed an answer as to the allegations against him and a response on behalf of TCI seeking to set aside entry of default as to TCI. Since Dr. Band is not an attorney, a deficiency notice was issued by the Clerk informing TCI to retain an attorney to file pleadings on its behalf. After several continued show cause hearings, an order striking the response of TCI was entered for its failure to retain counsel. Dr. Band's answer also was struck for his failure to appear at the show cause hearing and his failure to comply with Federal Rule of Civil Procedure 26. An order granting entry of default as to Dr. Band was entered March 29, 2013. Dckt. No. 67. A trial on damages was held August 22, 2013.

Due to the entry of default, the following facts set forth in the complaint are accepted as true. On August 28, 2010, Debtor

2

and Defendants entered into a rental agreement for Debtor to lease the property located at 2509 Sherbourne Drive for $750 a month for one year, with payments to begin September 1, 2010, and move-in to be on October 1, 2010. Dckt. No. 1, Ex. A. Debtor was on medical disability at the time the lease was executed, and paid $209 a week to the Defendants during the month of September, before moving in on October 1, 2010.

Debtor notified Defendants on October 1, 2010 that she did not have $750 to pay the October rent in advance. She gave Dr. Band, on behalf of TCI, $50 and proposed to pay the remaining $700 the following month. Defendants learned that the Debtor had opened a checking account at the CSRA Federal Credit Union. Debtor had never had a checking account before and Dr. Band told Debtor to make a check out to TCI for the remaining $700. Dr. Band told Debtor to notate that the check was for house rent. He told Debtor he would hold the check until November 1, 2010, at which time he would cash it. Pursuant to Dr. Band's instructions, Debtor noted "house rent" on the check, but she never signed the check.

Pre-petition, Dr. Band attempted to negotiate the check but it did not clear. On November 18, 2010, Defendants sent Debtor notice that the check had been dishonored. See Dckt. No. 1, Exs. B-1 and B-2. Exhibit B-2 indicates that the deposit date was November

3

4, 2010, approximately 34 days after the date of the check. Dckt. No. 1, Ex. B-2. On November 24, 2010, Dr. Band signed a bad check affidavit and a criminal arrest warrant was issued for Debtor. See Dckt. No. 3, Exs. C-1, C-2, C-3, and C-4. However, the evidence submitted by Dr. Band in support of the warrant had been altered. Specifically, the copy of the check's back side had been altered. The negotiated date of November 4, 2010, which appeared on Exhibit B-2 no longer appeared. Compare Dckt. No. 1, Ex. B-2 with Dckt. No. 1, Ex. C-3. It is assumed that the Magistrate Court would not issue a criminal arrest warrant for a check negotiated 34 days after it was received.

Dr. Band swore out a dispossessory warrant against Debtor pre-petition. Dckt. No. 1, Exs. D-1, D-2, D-3 and D-4. Despite the dispossessory warrant, Debtor continued to make rental payments to the Defendant over the next several months.

On or about March 31, 2011, Debtor vacated the premises. See Dckt. No. 1, Exs. D-5. On April 20, 2011, Debtor was arrested under the criminal arrest warrant issued at the request of Dr. Band. Debtor remained in detention in Richmond County for six hours, incurring bonding fees and other damages. See Dckt. No. 1, Ex. E.

On April 20, 2011, the Magistrate Court for Richmond County approved Dr. Band's affidavit of continuing garnishment

pursuant to a civil judgment obtained in the Magistrate Court for Richmond County, CIA No. 859843. Dckt. No. 1, Ex. F-1. In June, 2011, Defendants received $358.21 from the garnishment of Debtor's wages. Dckt. No. 1, Exs. F-3 and F-4.

Thereafter, June 27, 2011, Debtor filed this Chapter 13 bankruptcy case. On June 28, 2011, this Court issued an order to stop garnishment to Debtor's employer, TCI and the Clerk of Magistrate Court of Richmond County. Dckt. No. 1, Ex. G. On July 28, 2011, the Magistrate Court issued order staying all proceedings against Debtor. Dckt. No. 1, Ex. H. Both orders were served on the Defendants.

On July 15, 2011, the Magistrate Court dismissed the criminal arrest warrant. See Dckt. No. 1, Ex. I. On July 22, 2011, Dr. Band filed a proof of claim on behalf of TCI in the Debtor's Chapter 13 bankruptcy case asserting a debt of $9,400.00, indicating on its proof of claim that a portion of the claim was due to "warrant for a bad check returned by bank." Dckt. No. 1, Ex. J. At all times since June 28, 2011, Defendant knew Debtor had filed for bankruptcy.

During the pendency of this bankruptcy case, sometime between late July 2011 and August 2, 2011, Dr. Band testified before the Richmond County Grand Jury in support of the indictment for

5

renewal of the criminal charges against the Debtor regarding the pre-petition check. Dckt. No. 80, Ex. 3, Grand Jury Subpoena. Debtor contends Dr. Band did not disclose the following information during his testimony before the grand jury:

>(1) Debtor's signature was not on the check;
>
>(2) Debtor and Defendant had agreed Defendant would hold the check for one month;
>
>(3) the negotiation date of November 4, 2010, had been omitted from the document Dr. Band presented to the grand jury;
>
>(4) that Dr. Band was accepting payments from Debtor on the check over the period November 24, 2010 to March 30, 2011;
>
>(5) that Dr. Band was garnishing the Debtor's wages and had received $358.21 from the Debtor's employer; and
>
>(6) that Dr. Band had voluntarily filed a proof of claim on behalf of TCI for $9,400.00 to be paid from Debtor's Chapter 13 plan.

On August 2, 2011, as a result of Defendant's testimony before the Grand Jury, the Richmond County Grand Jury returned a true bill of indictment for deposit account fraud against Debtor. See Dckt. No. 1, Exs. K-1 and K-2. Post-petition on August 12, 2011, Debtor was arrested and jailed again on the check warrant. Dckt. No. 1, Exs. L-1 and L-2. Debtor had to be bonded out of jail again. She waived arraignment and pled not guilty. She was represented by the Augusta Public Defender's Office. On December

6

12, 2011, the State of Georgia, though the District Attorney's Office of the Augusta Judicial Circuit dead-docketed the criminal prosecution of this case. Dckt. No. 80, Ex. 5.

At the trial on damages in this Court, Debtor testified to damages sustained due to her two arrests - - one pre-petition arrest and one post-petition arrest. She testified to two days of lost wages in the total amount of $140.00, bond fees in the amount of $780.10, and storage fees for her furniture in the amount of $1,187.00 and attorney's fees in the amount of $14,040.00. Debtor also submitted evidence seeking punitive damages for violation of the stay.

## CONClUSIONS OF LAW

A default constitutes an admission of Debtor's "well-pleaded allegations of fact." Sony BMG Music Entm't v. Lee, 2007 WL 1221313 *1 (S.D. Ga. April 23, 2007) citing Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). However, in default defendants are "not held to admit facts that are not well-pleaded or to admit conclusions of law." Id. The Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."

7

Id. citing Tyco Fire & Sec., LLC v. Alcocer, 2007 WL 542583, at *2 (11th Cir. Feb. 22, 2007).

Generally, all court proceedings are automatically stayed upon the filing of a bankruptcy petition. 11 U.S.C. §362(a)(1). However, there is an exception to the automatic stay for "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. §362(b)(1). "This language has been broadly interpreted to encompass all criminal proceedings, regardless of their purpose, i.e., criminal cases commenced solely to collect a debt are unaffected by the automatic stay." In re Smith, 301 B.R. 96, 100 (Bankr. M.D. Ga. 2003); see In re Walker, 157 F. App'x 171, 172 (11th Cir. 2005)("The Bankruptcy Code excepts criminal proceedings from the automatic stay imposed when a debtor files for bankruptcy."); In re Henley, 480 B.R. 708, 805-06 (Bankr. S.D. Tex. 2012)("the §362(b)(1) exception 'covers, from start to finish, all of the parts or proceedings that constitute a criminal action. For example, §362(b)(1) shields the filing of a criminal complaint or other process that initiates the criminal action even if the person responsible is a private citizen who is the debtor's creditor.'").

Based upon the admitted facts, Dr. Band was subpoenaed and testified at the grand jury hearing post-petition and this testimony

8

led to the post-petition indictment and arrest of Debtor. Dckt. No. 80, Ex. 3. "The Debtor in this case is not arguing that the Defendants could not continue to pursue a valid criminal action. Instead, the Debtor urges the Court to consider the specific facts surrounding the criminal prosecution in this case before adopting a blanket rule that the Barnett decision would apply to all criminal prosecutions, regardless of their motivations or merit." Dckt. No. 80, p. 3. The specific facts cited by Debtor are that Dr. Band failed to disclose: that Debtor's signature was not on the check; his agreement with Debtor to hold the check for one month; the negotiation date of November 4, 2010 was omitted from the document presented to the grand jury; he was receiving money from Debtor; he was garnishing Debtor's wages; and he, as agent for TCI, had filed a proof of claim in her bankruptcy case.

In Walker, the Eleventh Circuit was faced with similar allegations where a creditor's attorney was assisting the district attorney in an unofficial capacity in prosecuting the debtor. The debtor argued the creditor's attorney violated the stay by making erroneous statements, providing substantial unsworn testimony, objecting to arguments by the debtor's criminal counsel, and assuming the role of the prosecutor. In re Walker, 157 F. App'x 171, 173 (11th Cir. 2005). The Eleventh Circuit stated while the

9

creditor's attorney's actions were "aggressive and probably motivated by a desire to collect the debt owed her client, [they] were not directed towards the satisfaction of a civil judgment or to gain an unfair advantage over [the debtor's] other creditors." Id. citing In re Kavoosi, 55 B.R. 120, 122-23 (Bankr. S.D. Fla. 1985)("It is obvious that where a debt is the result of criminal activity, a criminal prosecution will require the active cooperation of the creditor, and the imposition of a sentence after conviction must consider any restitution made by the accused.").

Similarly, the debtor in Smith, asserted that the creditor was acting in bad faith in initiating a criminal proceeding against the debtor. In re Smith, 301 B.R. at 102. The court stated that "absent some evidence of collusion with the district attorney, [the creditor's] motives are irrelevant." Id.; see also In re Swain, 325 B.R. 264 (B.A.P. 8th Cir. 2005)(creditor did not violate discharge injunction when creditor informed the county prosecutor of the bankruptcy case, which debtor alleged was to urge prosecutor to continue the criminal prosecution against the debtor which eventually led to the debtor's arrest). The Smith court stated that "even if [the debtor] could prove bad faith, there is no evidence that he would be unable to raise that bad faith as a defense in the state court. On the contrary, the Georgia Court of Appeals has held

10

that '[c]ompetent evidence, tending to show that the prosecution was instituted from improper motives . . . is always admissible' in a criminal case." Id. (alteration in original) quoting Duncan v. State, 199 S.E. 319, 320 (Ga. Ct. App. 1938). Similarly, in the current case, Dr. Band initiated the criminal proceeding pre-petition, the continuation of prosecution is left to the discretion of the district attorney. In re Smith, 301 at 102 ("It is the prosecutor's discretion, not the whims of the complaining witness, that determines whether a criminal case will proceed."). Like the creditor's attorney in Walker, Dr. Band may have made erroneous statements; however, this does not violate the automatic stay. Furthermore, Debtor would be able to raise this as a defense in her criminal case. In re Smith, 301 B.R. at 102.

"The enforcement of a criminal judgment against a debtor in a restitution hearing does not violate the automatic stay, and a creditor does not violate the automatic stay by assisting the state in enforcing the criminal judgment, even though the creditor's primary motivation is to collect on the debt." In re Walker, 157 F. App'x 171, 172 (11th Cir. 2005); In re Perry, 312 B.R. 723, 725 (Bankr. M.D. Ga. 2004)(criminal cases commenced solely to collect a debt are unaffected by the §362(a) stay); see also Barnette v. Evans, 673 F.2d 1250, 1252 (11th Cir. 1982)(finding a bankruptcy

11

AO 72A
(Rev. 8/82)

court's injunction of state criminal proceeding was overbroad). For these reasons, I find Dr. Band's actions before the grand jury on behalf of the Defendants did not violate the automatic stay.

In her brief, Debtor acknowledges the automatic stay does not prevent the commencement or continuation of a criminal action or proceeding against Debtor, but in her post-hearing brief she contends she has a claim for pre-petition false arrest, false imprisonment and malicious prosecution. These theories of recovery were not asserted in the Debtor's adversary complaint and therefore not appropriate for default judgment. See Fed. R. Civ. P. 54(c) made applicable to adversary proceedings by Fed. R. Bankr. P. 7054 ("a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings); In re Lee, 2012 WL 4512931 *9 (M.D. Fla. Sept. 30, 2012)(finding portions of bankruptcy court's order which were not supported by complaint's allegation void as violating Rule 54(c) and due process); Sony BMG Music Entm't v. Lee, 2007 WL 1221313 at *1 (the Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings *for the particular relief sought*.")(emphasis added).

Debtor's complaint also seeks injunctive relief. "A

12

federal court should not enjoin a pending state criminal prosecution except under extraordinary circumstances where there is a great and immediate danger of irreparable harm to plaintiff's federally protected rights that cannot be eliminated by his defense against a single prosecution." Barnette, 673 F.2d at 1252 citing Younger v. Harris, 401 U.S. 37, 46 (1971). According to Debtor, the district attorney has "dead-docketed" the criminal case so no injunction is necessary to avoid any immediate irreparable harm.

In Barnette, the Eleventh Circuit set forth a two-prong test for determining whether the court should enjoin a state criminal prosecution of a debtor on the ground that the prosecution will frustrate the bankruptcy judge's jurisdiction to discharge debt. In re Perry, 312 B.R. at 726; Griggs v. City of Gadsen Revenue Dept., 327 F. App'x 186, 188 (11th Cir. 2009). First, a debtor must establish that the criminal prosecution is brought in bad faith. Id. As previously mentioned, Dr. Band's motives are irrelevant as it is within the prosecution's discretion to pursue Debtor criminally. There is no evidence of collusion with Dr. Band or improper motive of the district attorney. Second, a debtor must establish that it would be no defense to the criminal prosecution that the prosecution was brought for the purpose of collecting a dischargeable debt. Id. Debtor would be able to raise Dr. Band's

13

purported bad faith as a defense in her criminal case. See In re Smith, 301 B.R. at 102. Furthermore, in bankruptcy, debts from Debtor's deposit account fraud are not discharged in a chapter 13 bankruptcy. See 11 U.S.C. §1328(a)(2)(excepting from discharge debts of the kind in 11 U.S.C. §523(a)(2)); In re Marsh, 449 B.R. 431, 437 (Bankr. N.D. Ga. 2011)(stating the use of an invalid document, such as a bad check to obtain money or property, constitutes a false representation under 523(a)(2)(A)). Unlike the creditor in In re Sheppard, 2000 WL 33743081 (Bankr. M.D. Ga. Jan. 6, 2000), the complaint and exhibits tendered into evidence in this case indicate the Defendants did not have a criminal warrant issued post-petition for Debtor's arrest. Post-petition, Dr. Band responded to a subpoena and testified before a grand jury, this did not violate the automatic stay. For the foregoing reasons, I find there is no need to enjoin the Defendants as the Defendants' own actions to collect this civil debt are stayed by 11 U.S.C. §362(a), but the criminal prosecution of Debtor is not.

For the foregoing reasons, Debtor's Motion for Default Judgment for sanctions for violation of the automatic stay is ORDERED DENIED. The Clerk is directed to set a hearing to show cause why the adversary proceeding should not be dismissed and closed.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 22nd day of November, 2013.